UNITED STATES DISTRICT COURT
for the
Southern District of Florida

ALEXEI STOLFAT

                *Plaintiff*,

v.                                  Case No. _____

EQUIFAX, INC.,
TRANS UNION, LLC., EXPERIAN
INFORMATION SOLUTIONS, INC.

                *Defendant(s)*.



FILED BY _PCS_ D.C.

JUL 15 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Alexei Stolfat (hereinafter "Plaintiff", "Consumer", "Stolfat", "I"), proceeding *Pro Se*, hereby bring this Complaint And Demand For Jury Trial against Defendants Equifax, INC. (hereinafter "Equifax"), Trans Union, LLC. (hereinafter "TransUnion"), Experian Information Solutions, INC. (hereinafter "Experian"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and state the following allegations and claims for relief:

## PRELIMINARY STATEMENT

1. The Consumer Financial Protection Bureau has noted, "experience indicates that [Credit Reporting Agencies] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

2. Under the FCRA, 15 U.S.C. § 1681 *et seq.*, Consumer Reporting Agencies (hereinafter "CRAs") are charged with three primary duties: (1) to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports, 15 U.S.C. § 1681e (b); (2) to reasonably reinvestigate consumers' disputes of inaccurate information, and then appropriately correct or modify the disputed information, 15 U.S.C. § 1681i; and, (3) to note a disputed item in the consumer's credit report, 15 U.S.C. § 1681c (f).

3. One of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

4. The gathering and sale of consumers' private and sensitive personal and financial information is a multi-billion dollar industry for the three largest CRAs: Equifax, TransUnion, and Experian.

5. Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities." *Cushman v. TransUnion*, 115 F.3d 220, 225 (3d Cir. 1997).

**PARTIES**

6. Plaintiff Alexei Stolfat is a consumer as defined by Section 1681a(c) of the FCRA, 15 U.S.C. § 1681, *et seq.* (Unless otherwise specified all "Section" references are to the FCRA.) Plaintiff is a Florida resident with a principal place of living at 250 Seminole Ave, Apt 1, Palm Beach, FL33480.

7. Equifax is a "Consumer Reporting Agency" as defined in 15 U.S.C. § 1681(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

8. EQUIFAX INC. is a Georgia corporation with its principal place of business at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Defendant EQUIFAX INC., through certain of its subsidiaries, including Equifax Consumer Services LLC and Equifax Information Services LLC, transacts or has transacted business in this District and throughout the United States. Equifax outsources business services, including processing consumer disputes, to vendors such as Intelenet. Equifax also outsources business processes, including without limitation to the processing of consumer disputes, to companies in the Philippines, India, and Costa Rica.

9. TransUnion is a "Consumer Reporting Agency" as defined in 15 U.S.C. § 1681(f). TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

10. TRANS UNION, LLC. is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TRANS UNION, LLC., through certain of its subsidiaries, including TransUnion Rental Screening Solutions, INC, transacts or has transacted business in this District and throughout the United States. TransUnion outsources business services, including processing consumer disputes, to vendors such as Intelenet. TransUnion also outsources business processes, including without limitation to the processing of consumer disputes to other countries such as India.

11. Experian is a "Consumer Reporting Agency" as defined in 15 U.S.C. § 1681(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing

information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

12. EXPERIAN INFORMATION SOLUTIONS, INC. is an Ohio corporation with its office and principal place of business located at 475 Anton Blvd. Costa Mesa, California 92626. Defendant EXPERIAN INFORMATION SOLUTIONS, INC., through certain of its subsidiaries, including ConsumerInfo.com, Inc. and Experian Consumer Services, transacts or has transacted business in this District and throughout the United States. Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

## JURISDICTION AND VENUE

13. This lawsuit is brought pursuant to the FCRA and presents a federal question. Therefore, jurisdiction arises under 28 U.S.C § 1331 and 15 U.S.C § 1681, *et seq*.

14. Venue is proper within this district and division pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS
### Processing of Credit Information

15. Defendants regularly receives information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

16. The process by which Defendants receive, sort, and store information is largely electronic. Furnishers report credit information to Defendants electronically on a periodic basis using an electronic format known as Metro 2 or similar.

17. Defendants take the credit information reported by these furnishers and create or associate consumer credit files.

18. Credit files are updated electronically by furnishers to reflect new information regarding the reported accounts/tradelines.

19. When a furnisher wants to make a change to its reporting between reporting periods, a furnisher makes that change electronically using an electronic document known as an AUD or UDF, or similar.

### Investigation And Reinvestigation Procedures

20. When the Defendants receive a dispute from a consumer, the Defendants investigate the dispute using an automated browser-based system called the Online Solution for Complete and Accurate Reporting ("e-OSCAR"), or similar. This system was designed to provide furnishers with an online solution for processing consumer disputes.

21. Through e-OSCAR, Defendants send to the furnisher an Automated Credit Dispute Verification ("ACDV") that is supposed to include: the information the CRA is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute, which the agency received from the consumer.

22. Through this ACDV, the Defendants ask the furnisher to investigate the information in question and determine whether the information that it is reporting to the CRA is correct, complete, and verifiable.

23. Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) the Defendants have on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

24. The furnisher is then supposed to return the ACDV to the Defendants with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the Defendants that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

25. If a furnisher chooses to verify the information, it will check a box called "Verified As Reported." Once checked, this will instruct the Defendants that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

26. If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

27. Whenever a furnisher directs the Defendants to change information on a consumer's credit file, that furnisher affirms to the Defendants that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

### Defendants Chronic Mixed File Problem

28. Mixed files are chronic causes of inaccuracies that Defendants have known about for almost four decades. *See. Thompson v. San Antonio Retail Merchants Ass'n*, 682 F..22d 509 (5th Cir. 1982).

29. Mixed files have been the subject of a regulatory enforcement action, attorney general investigations and of hundreds, if not thousands, of consumer complaints and litigation. *See. Alabama v. TransUnion*, Civ. No. 92-C-7101 (N.D. Ill. Oct. 16, 1992) (Consent Order); *Philbin v. TransUnion Corp.*, 101 F.3d 957 (3d Cir. 1996) (CRA improperly mixed father's credit information into son's credit file).

30. In the mid-1990's, the Federal Trade Commission and various state attorney generals' offices charged the nationwide credit reporting agencies with violations of the FCRA. Including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah, and Washington.

31. The government enforcement actions required the CRAs to improve their procedures and prevent mixed files. *See. FTC v. TRW, Inc.*, 784 F.Supp. 361 (N.D. Tex. 1991))((amended by N.D. Tex. 7Jan. 14, 1993) (agreed order amending consent order); *TRW, Inc. v. Morales*, CV-3-91-1340-H (N.D. Tex. Dec. 10, 1991); *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 FTC 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996); and *Alabama v. TransUnion, Corp.*, CV-92C7101 (N.D. Ill. Oct. 26, 1992).

32. The Credit Reporting Agencies agreed to maintain reasonable procedures to avoid: (i) including a consumer report information identifiable as pertaining to a consumer other than the consumer for whom a permissible purpose exists as to such report; and (ii) displaying files identifiable as pertaining to more than one consumer in response to a subscriber request on one consumer.

33. Further, the CRAs agreed to prevent reporting to subscribers that credit information pertains to a particular consumer unless the CRAs have identified such information by at least two of the following identifiers: (i) the consumer's name; (ii) the consumer's social security number; (iii) the consumer's date of birth; (iv) the consumer's account number with a subscriber or a similar identifier unique to the consumer.

34. For public record information, in the event the public record information does not include at least two of the above - described personal attributes, Defendants agreed to identify

the public record information by the consumer's full name (including middle initial and suffix, if available) together with the consumer's full address.

35. The Credit Reporting Agencies have been defendants in mixed file related the FCRA lawsuits for decades. *See. Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013); *Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008); *Thomas v. TransUnion*, Case No. 3-00-01150 (D. Or. 2002); *Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010) (TransUnion improperly mixed narcotic trafficker's OFAC criminal alert into innocent consumer's credit file).

36. One of the earliest mixed file cases, *Thomas v. TransUnion*, resulted in a $1.3 million verdict against TransUnion in 2002. *See. Thomas v. TransUnion*, Case No. 3-00-01150 (D. Or. 2002).

37. In 2007, Angela Williams sued Equifax in Florida and alleged Equifax mixed her file with another consumer with a similar name. The jury found in favor of Angela Williams and entered a verdict against Equifax for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages. *See. Williams v. Equifax*, Case No. 48-2003-CA-9035-0 (Orange Co., Fla. 2008).

38. In July of 2013, Judie Miller sued Equifax in Oregon and alleged that Equifax mixed her file with another consumer who had a different social security number, date of birth and address. The jury found in favor of Ms. Miller and entered a verdict against Equifax for over $18 million, including $180,000.00 in actual damages and $18.4 million in punitive damages. *See. Miller v. Equifax*, Case No. 3:11-cv-01231 (D. Or. 2013).

39. In 2012, New York Attorney General Eric T. Schneiderman launched an investigation into Experian, TransUnion, and Equifax after all three CRAs were the subject of

numerous complaints about errors on state residents' credit reports, including mixed files, and the onerous process to fix them.

40. A mixed or merged credit file is the result of Defendants inaccurately merging credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

41. There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by the Defendants to match credit information, including collection information, to a particular consumer's credit file.

42. The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to the Defendants.

43. A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to the Defendants.

44. These rules also determine which credit files are merged to create a complete consumer report.

45. Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

### Plaintiff's Disputes

46. Furnisher(s) furnished and continues to furnish account(s) inaccurately to the Defendants.

47. Plaintiff have disputed the accuracy of the furnisher(s) account(s) with Defendants on numerous occasions.

48. Defendants received Plaintiff' disputes and forwarded or not forwarded those disputes to the furnisher(s).

49. During this time, Plaintiff' credit score suffered greatly.

50. Plaintiff suffered adverse action (including, personal and business credit denial, delay in obtaining credit, and/or other such action) due to the inaccurately reported furnisher(s) account(s), based on consumer report(s) issued by Defendants. **Plaintiff states the allegations and claims for relief of TOTAL AMOUNT $571,600.00 that includes allegations and claims for relief of the following amounts: a) $260,000.00 against Equifax, b) $210,800.00 against TransUnion, c) $100,800.00 against Experian, and expenses Plaintiff will suffer during this case, and pray for other relief as the Court deems just and proper.** *See.* Exhibit A

51. These adverse actions and others caused Plaintiff considerable emotional distress, including frustration, embarrassment, and humiliation.

52. Upon information and belief, the Defendants processed Plaintiff's disputes by sending or NOT sending ACDVs to furnisher(s).

53. Upon information and belief, furnisher(s) responded to those ACDVs by improperly verifying the inaccurately reported account(s) information.

54. Other than sending ACDVs to furnisher(s), the Defendants did nothing to investigate the accuracy of the account(s).

55. Plaintiff spent many hours of time disputing the inaccurate reporting with furnisher(s) and Defendants.

56. Plaintiff worked very hard and deliberately for years to maintain their excellent credit history.

57. The failures of Defendants to correct these inaccurate reporting have caused Plaintiff a great amount of anxiety and have impaired Plaintiff' ability to obtain credit or to obtain credit

on favorable terms. **Plaintiff believes that before the DISCOVERY phase starts in this action, the monetary damages may exceed $10,000,000.00 (Ten Million USD),** due to the fact that Plaintiff plans and will file Government, Bank(s), Private Foundation Grant(s), and Small Business Administration Loan(s) Application(s) and exists risks of Grants/Loans being declined due to Plaintiff's low credit score report, derogatory unverified account(s) and/or other incorrect, unconfirmed, false and defamatory information negatively reported by Defendants to Plaintiff credit reports.

## CLAIMS FOR RELIEF

### FCRA Violations by Equifax

58. The Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein.

59. Plaintiff disputed the furnisher(s) tradeline(s) with Equifax and requested that Equifax conduct an investigation and/or reinvestigation pursuant to Section 1681i.

60. Plaintiff request for investigation and/or reinvestigation included sufficient information for Equifax to provide actual notice that the information in dispute(s) was inaccurate and that the sources of the disputed information were not reliable.

61. But Equifax did not conduct any investigations and/or reinvestigations.

62. Instead, in response to Plaintiff' disputes, Equifax simply parroted the inaccurate reporting it received from furnisher(s) and conducted no investigation of its own. *See.* Exhibit B **As a result, Plaintiff states the allegations and claims for relief of $260,000.00 and expenses Plaintiff will suffer during this case, and pray for other relief as the Court deems just and proper.**

63. In response to Plaintiff' disputes, Equifax performed no investigation at all and did not even initiate its normal investigation and/or reinvestigation processing procedures.

64. If Equifax did conduct the investigation and/or reinvestigations requested by Plaintiff, Equifax failed to perform reasonable investigations.

65. Equifax knows that the FCRA does not permit it to simply parrot the information it receives from furnisher(s); yet this is exactly what Equifax does both when it initially reports information and when it *investigates* consumer disputes.

66. Even prior to Plaintiff requests for investigation and/or reinvestigation, Equifax maintained sufficient information about the furnisher(s) account(s) for Equifax to conclude that the account(s) was being inaccurately reported and/or that furnisher(s) reporting of the account(s) was not reliable.

67. Basic policies and procedures would have prevented Plaintiff's file from becoming mixed; however, upon information and belief, Equifax instead chose to rely on automated processes to pull information from databases with no human oversight, resulting in Plaintiff's credit file being mixed with an unknown third party.

68. Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff' consumer report in violation of Section 1681e(b).

69. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, the loss of personal and business credit(s), denial of housing, loss of the ability to purchase and benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

70. Equifax negligently violated Section 1681e; alternatively, Equifax willfully violated Section 1681e.

71. Equifax negligently violated Section 1681i; alternatively, Equifax willfully violated Section 1681i.

72. Equifax's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

73. In addition, Plaintiff states that Plaintiff was damaged by the 2017 Equifax Data Breach, Case No.1:17-md-2800-TWT (N.D. Ga.), and Equifax still does not follow court order, and fails to pay $20,000 monetary compensation to Plaintiff. *See.* Exhibit C

## FCRA Violations by TransUnion

74. The Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein.

75. Plaintiff disputed the furnisher(s) tradeline(s) with TransUnion and requested that TransUnion conduct an investigation and/or reinvestigation pursuant to Section 1681i.

76. Plaintiff request for investigation and/or reinvestigation included sufficient information for TransUnion to provide actual notice that the information in dispute(s) was inaccurate and that the sources of the disputed information were not reliable.

77. But TransUnion did not conduct any investigations and/or reinvestigations.

78. Instead, in response to Plaintiff disputes, TransUnion simply parroted the inaccurate reporting it received from furnisher(s) and conducted no investigation of its own. *See.* Exhibit D **As a result, Plaintiff states the allegations and claims for relief of $210,800.00 and expenses Plaintiff will suffer during this case, and pray for other relief as the Court deems just and proper.**

79. In response to Plaintiff' disputes, TransUnion performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

80. If TransUnion did conduct the investigation and/or reinvestigations requested by Plaintiff, TransUnion failed to perform reasonable investigations.

81. TransUnion knows that the FCRA does not permit it to simply parrot the information it receives from furnisher(s); yet this is exactly what TransUnion does both when it initially reports information and when it *investigates* consumer disputes.

82. Even prior to Plaintiff requests for investigation and/or reinvestigation, TransUnion maintained sufficient information about the furnisher(s) account(s) for TransUnion to conclude that the account(s) was being inaccurately reported and/or that furnisher(s) reporting of the account(s) was not reliable.

83. Basic policies and procedures would have prevented Plaintiff's file from becoming mixed; however, upon information and belief, TransUnion instead chose to rely on automated processes to pull information from databases with no human oversight, resulting in Plaintiff's credit file being mixed with an unknown third party.

84. TransUnion failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff' consumer report in violation of Section 1681e(b).

85. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, the loss of personal and business credit, denial of housing, loss of the ability to purchase and benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

86. TransUnion negligently violated Section 1681e; alternatively, TransUnion willfully violated Section 1681e.

87. TransUnion negligently violated Section 1681i; alternatively, TransUnion willfully violated Section 1681i.

88. TransUnion's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

### FCRA Violations by Experian

89. The Plaintiff re-alleges and incorporates paragraphs 1 through 57 above as if fully set forth herein.

90. Plaintiff disputed the furnisher(s) tradeline(s) with Experian and requested that Experian conduct an investigation and/or reinvestigation pursuant to Section 1681i.

91. Plaintiff request for investigation and/or reinvestigation included sufficient information for Experian to provide actual notice that the information in dispute(s) was inaccurate and that the sources of the disputed information were not reliable.

92. But Experian did not conduct any investigations and/or reinvestigations.

93. Instead, in response to Plaintiff' disputes, Experian simply parroted the inaccurate reporting it received from furnisher(s) and conducted no investigation of its own. *See.* Exhibit E **As a result, Plaintiff states the allegations and claims for relief of $100,800.00 and expenses Plaintiff will suffer during this case, and pray for other relief as the Court deems just and proper.**

94. In response to Plaintiff' disputes, Experian performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

95. If Experian did conduct the reinvestigations requested by Plaintiff, Experian failed to perform reasonable investigations.

96. Experian knows that the FCRA does not permit it to simply parrot the information it receives from furnisher(s); yet this is exactly what Experian does both when it initially reports information and when it *investigates* consumer disputes.

97. Even prior to Plaintiff requests for investigation and/or reinvestigation, Experian maintained sufficient information about the furnisher(s) account(s) for Experian to conclude that the account(s) was being inaccurately reported and/or that furnisher(s) reporting of the account(s) was not reliable.

98. Basic policies and procedures would have prevented Plaintiff's file from becoming mixed; however, upon information and belief, Experian instead chose to rely on automated processes to pull information from databases with no human oversight, resulting in Plaintiff's credit file being mixed with an unknown third party.

99. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff' consumer report in violation of Section 1681e(b).

100. As a proximate result of this conduct, Plaintiff suffered actual damages including, but not limited to, the loss of personal and business credit, denial of housing, loss of the ability to purchase and benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

101. Experian negligently violated Section 1681e; alternatively, Experian willfully violated Section 1681e.

102. Experian negligently violated Section 1681i; alternatively, Experian willfully violated Section 1681i.

103. Experian's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

## JURY DEMAND

104. Plaintiff demand a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court enter judgment against Equifax, TransUnion, and Experian for negligent and/or willful violations of the FCRA and award Plaintiff actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, embarrassment, and damage to credit reputation; statutory damages; punitive damages. Plaintiffs further request such other relief as the Court deems just and proper.

Dated: July 15, 2024

Respectfully submitted by:

*A. Stolfat*

Plaintiff *Pro Se* Signature

ALEXEI STOLFAT - *Pro Se*
250 SEMINOLE AVE, APT 1
PALM BEACH, FL 33480
EMAIL: STOLFAT@USA.COM
PHONE: 561-657-7900